In the Matter of THE PEOPLE OF THE STATE OF NEW YORK, by
GEORGE S. VAN SCHAICK, Superintendent of Insurance of the
State of New York, as Rehabilitator of the BOND AND MORT-
GAGE GUARANTEE COMPANY.

Supreme Court, Kings County, November 26, 1934.

*C. Schneikraut,* for the petitioner.

*Hughes, Schurman & Dwight,* for the rehabilitator.

BROWER, J.   On or about September 30, 1927, a certain bond and mortgage in the sum of $250,000 was executed in favor of Title Guarantee and Trust Company, and participation certificates therein were sold to the investing public.   Bond and Mortgage Guarantee Company issued a policy guaranteeing payment of the principal and interest of such bond and mortgage.   The mortgage matured on October 1, 1932, but the owner of the premises defaulted upon that date.   On December 8, 1932, an agreement was entered into between the title company and the owner by the terms of which the latter undertook to amortize the principal debt by paying the sum of $1,000 on the first days of January, April, July, and October of each year, beginning the 1st day of January, 1933, and ending on the 1st day of July, 1935, and to pay the then remaining principal on October 1, 1935.

The extension agreement was consented to by all of the holders of the participation certificates with the exception of five of such holders.   Between January 3, 1933, and February 24, 1933, each of these non-assenting holders surrendered their certificates to Bond and Mortgage Guarantee Company and unavailingly demanded payment of the same.

Subsequent to October 1, 1932, at which time the owner defaulted, the title company acquired an interest in the mortgage by the purchase of certain of the original certificates, to the extent of $32,600, and thereafter sold assenting certificates in the sum of $19,400, maturing on the date of the mortgage as extended, together with eight assenting certificates of the face value of $1,000 each, maturing on dates respectively corresponding to a date fixed by the mortgage as modified, for the payment of an installment of principal.   In all there were eleven such dates fixed by said mortgage; only the eight later dates, however, were represented by certificates.

The owner of the premises has duly complied with the terms of the extension agreement by paying $1,000 upon each occasion when an amortization payment was due. The first, second and third payments were collected by the title company. The fourth, fifth and sixth payments were remitted to the particular amortization certificate holder whose certificate called for satisfaction at the given time. It is stated in the rehabilitator's affidavit that, at the time payment was remitted to the holders of said amortization certificates, the rehabilitator was not aware that there were five original certificate holders who had not consented to the extension agreement. On July 1, 1934, another payment of $1,000 was made by the owner of the premises. One Irving Levine holds the amortization certificate payable as of that date. The rehabilitator, however, having discovered the existence of the five non-assenting original certificates, has refused to pay over the above sum of $1,000 to Levine. The latter brings the present motion to compel such payment.

The issue which has been raised involves the rights of three different groups of certificate holders, to wit, the assenting certificate holders, the amortization certificate holders, and the non-assenting certificate holders. The question is whether any of the above groups is entitled to a priority in the payment of the moneys which have been collected on the mortgage debt.

When the debt owed by the mortgagor became due on October 1, 1932, all of the then certificate holders were entitled to payment. The title company, for certain purposes, may have been the agent of the certificate holders, but it was not authorized to execute on their behalf an agreement extending the life of the mortgage. At maturity it should have collected the mortgage debt for distribution to the certificate holders, and the failure of the agent to take steps to collect the principal and interest when due, and then its executing an extension agreement, constituted a breach of trust. The rights, nevertheless, of the five certificate holders who have never consented to the unauthorized extension remain unimpaired and as they existed under the original mortgage. What, however, is the position of the certificate holders who received assenting certificates?

The certificates issued by the title company represented parts or shares in a single mortgage, and certificate holders became owners of said mortgage as tenants in common. As such, no certificate holder had the right to do any act which would prejudice the rights of any other holder, and any consent to the terms of an extension agreement by any number of the certificate holders less than the whole would be ineffectual. It appears that after said

agreement was entered into, certain certificate holders surrendered their original certificates for assenting certificates which purported to evidence the ownership of shares or parts in the mortgage as modified by the extension agreement. Such an acceptance of an assenting certificate, if by a single certificate holder, would ordinarily be said to constitute a waiver of any rights under the original mortgage and a ratification of the terms of the mortgage as modified by the extension agreement. Here, however, a waiver and ratification would be ineffectual as between the certificate holders if given by any number of holders less than the whole, and it will be presumed that the acceptance of an assenting certificate by any one certificate holder was contingent upon an acceptance by every other certificate holder, of such an assenting certificate, and, in the absence of such total acceptance, no waiver or ratification resulted. Consequently, any payments of principal which have been made by the mortgagor since October 1, 1932, are to be treated as moneys paid on account of an overdue mortgage indebtedness, in which each of the original certificate holders or their assigns, irrespective of whether he failed to consent or ineffectually consented to the extension agreement, is entitled proportionately to share.

The holders of the amortization certificates stand in no different position. When the title company purchased certain certificates from original certificate holders, as heretofore mentioned, it succeeded merely to the rights of the latter. Obviously, it did not thereby acquire a right to be preferred over the original certificate holders in a distribution of the installment moneys. It could not, by a sale of the so-called amortization certificates, convey a right which it itself never had. Consequently, none of the amortization certificate holders, including the present moving party, is entitled to a preference.

Nothing herein contained, however, is to be construed as impeaching the validity of the extension agreement in so far as the rights of the mortgagor are concerned. The title company was the mortgagee of record, and it does not appear that the mortgagor was ever put upon notice that the title company's interest, as mortgagee, had been assigned to the certificate holders. In the absence of such notice, the mortgagor was entitled to enter into the extension agreement with the title company upon the assumption that the latter retained its position as mortgagee.

Application denied. Settle order on notice.